# Oil City, Appellant, *v.* Oil City Boiler Works.

*Municipalities—Power of councils—Sewers—Act of May 23, 1889.*

Under the act of May 23, 1889, P. L. 312, giving councils of cities of the third class the power to provide for the construction of sewers, councils have authority to determine the necessity for a main sewer, and for such branches as constitute a necessary part of such main sewer, and after councils have regularly legislated on the subject, it cannot be shown on the trial of a scire facias to enforce payment of assessments that councils were mistaken in considering that a part of a main sewer, which at best was nothing more than a local or lateral sewer.

Whether a main sewer or a merely local or lateral one is necessary on a particular street or portion of a street is a question of engineering and legislative judgment, vested exclusively in councils, and not reviewable, except under extraordinary circumstances which have no existence in this case. Per STERRETT, J.

*Sewer assessments—Taxation—Appeal—Constitution, art. 1, sec. 11.*

Assessments for the construction of sewers is a species of taxation, which is constitutional and proper, without provision for an appeal from the action of those intrusted with the duty of making or revising such assessments.

Argued Oct. 6, 1892. Appeal, No. 172, Oct. T., 1892, by plaintiff, from judgment of C. P. Venango Co., April T., 1891, No. 14, on verdict for defendant. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Scire facias sur municipal lien for sewer assessments.

The facts appear by the opinion of the Supreme Court.

Defendant's points were, among others, as follows:

" 3. The uncontradicted evidence being that the main sewer on Duncomb street lies two hundred and twenty feet distant from the lands of defendant, against which claim is made herein, and can only be reached from said land by a lateral sewer, said main sewer does not afford local sewerage for said lands and the special assessment made against said lands, including as it does the cost of construction of said sewer, is illegal, and plaintiff cannot, for that reason, recover." Affirmed. [1]

" 4. Only one assessment can be levied for the cost of a lateral sewer, and that assessment must be only upon the lots to which such sewer affords local sewerage." Affirmed. [2]

" 5. The council of plaintiff exceeded their powers in said

ordinance, by directing that both a general and special assess-
ment, or assessment for main and local sewerage, be assessed to
pay for the construction of the lateral sewers specified therein."
Affirmed. [3]

"6. Councils of plaintiff exceeded their powers in directing
by said ordinance : ' That the whole of said sewer and its
branches be a main sewer and also that all thereof shall be a
local or lateral sewer for lands abutting thereon or that may
lie wholly or in part within one hundred feet of said sewer or
any of its branches,' and said ordinance with the assessment
claimed herein made pursuant thereto are therefore void, and
plaintiff cannot recover." Affirmed. [4]

"7. The ordinance under which these sewers were con-
structed, with the assessment claimed herein made pursuant
thereto, is void, because said ordinance provides, ' That the
cost and expense of work herein provided for, both for main
sewerage and for local or lateral sewerage, be assessed on the
property in the First Sewer District according to benefits.'"
Affirmed. [5]

"8. The 13th article of the act of assembly of May 23, 1889,
being the same under which plaintiff attempted to act in the
construction of said sewers and collection of the cost thereof,
is contrary to the provisions of § 11, article 1 of the constitu-
tion of this commonwealth, and void." Affirmed. [6]

"9. Under the evidence the verdict of the jury must be for
the defendant." Affirmed. [7]

The court charged as follows by TAYLOR, P. J.:

" Under our view of the law, we affirm the defendant's points
here, and give the plaintiff the benefit of all there is in it. We
will affirm the points of the defendant and instruct you to find
a verdict for the defendant." [8]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were, (1–8) instructions as above, quoting
them.

*Isaac Ash*, city solicitor, *P. M. Speer* with him, for appellant,
cited, on the question of sewer assessments being local taxa-
tion : Hammett v. Phila., 65 Pa. 146 ; Washington Ave., 69 Pa.
352 ; Seely v. Pittsburgh, 82 Pa. 360 ; Craig v. Phila., 89 Pa.
265 ; Olive Cemetery Co. v. Phila., 93 Pa. 129 · Erie v. Church,

105 Pa. 278; Alcorn v. Phila., 112 Pa. 494; Michener v. Phila., 118 Pa. 535; Chester v. Black, 132 Pa. 568.

*H. D. Hancock,* for appellees.—It would have been error to have left to the jury to determine whether the sewer was or was not a main sewer: Eyster v. Paul, 54 Pa. 196: Angier v. Eaton, Cole Burnham Co., 98 Pa. 594; Meadville v. Dickson, 129 Pa. 1; Hershberger v. Pittsburgh, 115 Pa. 78; Olds v. Erie, 79 Pa. 380; Pittsburgh v. Walter, 69 Pa. 365; Southwark v. Neil, 3 Yeates, 54; Oil City v. Morris, 1 Penny. 420.

The act of 1889 is unconstitutional: Seely v. Pittsburgh, 82 Pa. 360; Ervine's Ap., 16 Pa. 256; Huber v. Reily, 53 Pa. 112; Cooley, Const. Lim. 354; Hammett v. Phila., 65 Pa. 146; Pettibone v. Smith, 30 W. N. 325; s. c., 150 Pa. 118; Erie v. Russell, 30 W. N. 26; Allegheny City v. West Penn. R. R., 138 Pa. 375; Pittsburgh's Ap., 138 Pa. 401; Washington Ave., 69 Pa. 352.

OPINION BY MR. JUSTICE STERRETT, January 3, 1893:

This scire facias issued on a municipal claim founded on an assessment for the cost of constructing Duncomb street sewer under provisions of the act May 23, 1889, P. L. 312.

The first section of article XIII. of said act provides that the' councils of any city of the third class may provide by ordinance for the division thereof into sewer districts, and may direct the city engineer to make an estimate of the cost and expense of constructing any main sewer, or reconstructing the same, and to report to councils what proportion of said cost and expense is required for main sewerage and what proportion of the same is required for local sewerage, for any lots or lands to which any portion of such main sewer, to be designated by councils, shall serve for local sewerage; and it shall be lawful for the city councils to cause sewers of all kinds to be constructed or reconstructed without petition therefor from the property owners, and to provide for the payment of such sewers from the general revenues of the city, or by assessing the cost thereof as follows, viz.: In the case of main sewers, such proportion of the cost and expense of the same as is required for local sewerage shall be assessed upon the property abutting thereon, by an equal assessment by the foot front, or according to the assessed valuation of such property for purposes of city taxa-

tion, or in proportion to benefits upon lots or lands benefited by such local sewerage, as councils shall in each case determine, and the cost of such main sewer over and above the portion thereof assessed for local sewerage, as above provided, shall be assessed upon the lot or lots within the sewer district where the work is to be done, according to the valuation of such lots or lands for city purposes, or according to benefits, or paid from the general revenues as councils may in each case determine. The cost of lateral sewers shall be assessed upon the lots or lands along or through which such lateral sewers run, according to the valuation of such lots or lands as aforesaid, or in proportion to benefits upon lots or lands benefited, or by an equal assessment by the foot front upon the lands along or through which such sewers run, as councils may determine.

If councils determine to make an assessment for main, local or lateral sewerage according to benefits, the second section provides for the appointment of three disinterested viewers, who, or a majority of whom, shall assess the estimated expenses, as reported by the city engineer, of such main sewerage on all the lots or lands in the sewer district wherein the sewer is to be constructed or reconstructed, in proportion to benefits, and the estimated expenses, as reported by such engineer, of such local or lateral sewerage on such lots or lands as will in their opinion be benefited thereby, whether fronting on the ground in which the sewer is to be constructed or reconstructed, or not, in proportion, as nearly as may be, to the benefits which may result to each lot or parcel of land.

The third section requires the viewers to make a report in writing, specifying the amount assessed upon each lot or parcel of land for main or local sewerage separately, and file the same with the city clerk within such time as councils shall direct. It further provides for public notice, filing objections to the assessments, hearing before councils in joint convention at the time specified in the notice, and for modifying, setting aside or confirming said assessments, etc.

In the fourth section provision is made for the collection of such assessments, filing liens therefor, etc.

It thus appears that councils are invested with ample discretionary powers in the premises. To them is intrusted the

authority to determine when and where sewers shall be constructed, whether they shall be main sewers, intended to receive and discharge the sewerage of local or lateral sewers, etc., and in which of the three methods, authorized by the act, the cost of constructing such sewers shall be provided for.

In accordance with the provisions of the act, councils passed the ordinance of December 13, 1889, "Providing for the construction of a sewer from Oil creek along Duncomb street to Plumer road, with branches on the east side of the railroad and on Seneca and Elm streets." As amended by ordinance of March 14, 1890, the first section provides for a twenty-four inch sewer from Oil creek to the east side of the railroad, a fifteen inch sewer from that point to the Plumer road, a twelve inch sewer on Elm street northerly 225 feet and southerly 175 feet, and a twelve inch sewer on Seneca street, northerly 250 feet; with six inch branches, from each of said sewers to the curb line, for each property.

The ordinance also declares that the whole of said sewer, including its branches on the designated portions of said streets, shall be a main sewer, and also that all thereof shall be a local or lateral sewer for lands abutting thereon, etc., and provides that the cost and expense of the work for both main sewerage and for local or lateral sewerage be assessed on the property in the First Sewer District according to benefits. In due course, the assessments were made by viewers appointed for that purpose, notice thereof was given, objections filed by defendant were considered and disposed of, the report of the viewers was confirmed, and afterwards the lien was filed.

On the trial, a great deal of testimony was introduced, much of which appears to have been irrelevant. The defendant undertook to show that the ordinance above referred to and all proceedings thereunder, including assessments for costs of construction, were irregular and void, for the following, among other reasons : 1st. Because the ordinance provides for the construction of a main sewer with four lateral sewers, or branches, under one estimate for the whole work. 2d. Because the whole of said sewer, including its branches, is declared to be a main sewer, and also that the whole shall be a local or lateral sewer for lands abutting thereon. 3d. Because the assessments on defendant's lot, confirmed by councils against

its objections, are a general assessment of $46.03, and a special or local assessment of $63.37, for the construction of said main sewer and four lateral sewers taken together, without anything to distinguish the cost of either separately.   In this connection, it was contended that the sewer on Duncomb street proper is the only part of the work that can with any propriety be called a main sewer, and that those connecting therewith but not located on said street are in no sense main sewers, or parts of the main or Duncomb street sewer; and it is claimed that fact is established by the evidence, notwithstanding the determination of councils to the contrary.

This is a mistake; and it results from the unwarranted assumption that a main sewer cannot have branches which constitute a necessary part of such main sewer; and that after councils have considered the necessity for constructing such main sewer, including its branches as part thereof, and have regularly legislated thereon, it may be shown, on the trial of a scire facias to enforce payment of assessments, that councils were mistaken,—that what they, in the proper exercise of legislative judgment, considered a necessary part of a main sewer, is at best nothing more than a local or lateral sewer.   As we have seen, the authority, "to cause sewers of all kinds to be constructed or reconstructed," is vested exclusively in councils. In the exercise of their legislative judgment, enlightened by the skill and experience of the city engineer, they have an undoubted right to adopt a system of sewerage for each sewer district, and in doing so to determine the location of main, as distinguished from merely local or lateral sewers.   Whether a main sewer or a merely local or lateral one is necessary on a particular street or portion of a street is a question of engineering and legislative judgment, vested exclusively in councils, and not reviewable, except under extraordinary circumstances which have no existence in this case.   To hold otherwise, and thus permit the introduction of testimony for the purpose of showing that the regularly declared judgment of councils was erroneous, etc., would be productive of disastrous results.   It follows, therefore, that much of the testimony introduced by the defendant was irrelevant and incompetent; and that the position assumed by it is wholly untenable.

At the close of the trial, defendant submitted nine points for

charge, which the learned judge disposed of very summarily, by announcing that he would affirm said points, "and give the plaintiff the benefit of all that is in it;" and thereupon directed a verdict for the defendant.

In thus withdrawing the case from the jury, it must be presumed the court did not undertake to decide any question of fact raised, or supposed to have been raised, by the testimony. The ruling must have been based on some question or questions of law that were supposed to control the case. Such a question was presented by the point recited in the sixth specification, viz.: "The thirteenth article of the act of May 23, 1889, under which the plaintiff attempted to act in the construction of said sewers and collection of the cost thereof, is contrary to the provisions of section 11, art. 1, of the constitution of this commonwealth, and void."

The only conceivable way in which it can be even supposed that the act in question impinges on the section of the constitution above referred to, is that no provision is made for appeal to court from the action of the viewers in making the assessments or of councils in confirming their report.

Assessments for the construction of sewers and original grading and paving of streets, etc., have always been regarded as a species of taxation, which, within well defined limits, is constitutional and proper, without provision for such appeal from the action of those intrusted with the duty of making or revising such assessments. The principle is too firmly settled by a long line of cases, including Hammett v. Philadelphia, 65 Pa. 146, Michener v. Same, 118 Pa. 535, and on down to Harrisburg v. Segelbaum, 151 Pa. 172, to be now shaken. In Michener v. Phila., supra, it was held that laws and ordinances authorizing the construction of sewers were not unconstitutional, that the judgment of city councils as to the necessity for their construction is final and conclusive, and that on a scire facias sur municipal claim for the assessed cost of construction the defendant will not be permitted to prove that the sewer was not a private benefit to him or his property, nor a matter of necessity to the public. Referring to that ground of defence, it was there said, that such assessments are "a species of taxation, and all taxation is presumed to be for the benefit, directly or indirectly, of the taxpayer or his property. Laid,

as taxes are, under general laws, there will always be cases of individual hardship. . . . When a man comes to pay his general taxes, he cannot be permitted to allege that he derives no benefit therefrom. And it would be intolerable, if, in every instance of special taxation, the question of benefits could be thrown into the jury box. It would introduce into municipal government a novel and dangerous feature."

In the case before us, it is not even alleged that the sewer was badly constructed or that it cost less than is claimed by the city, or that defendant's property is not benefited by the construction, to an extent at least fully equal to the sum assessed thereon.

The burden of defendant's complaint in its third to seventh points, inclusive, is that, for reasons therein suggested, the assessments are illegal and void.

What has already been said is a sufficient answer to each of these points. Neither of them should have been affirmed. An examination of the record shows that the proceedings of councils were in accordance with the provisions of the act; and it also fails to disclose any valid ground of defence to plaintiff's claim. The specifications of error are all sustained.

Judgment reversed and a venire facias de novo awarded.