## HENNING v. CONSOLIDATED BUILDING & LOAN CO., ET AL. AND FIVE OTHER CASES

(Nos. 1930-1935; Nov. 24, 1936; 62 Pac. (2d) 540)

For the plaintiff in error there were briefs and the cases were argued orally by *R. R. Rose* of Casper.

For the defendants in error, there were briefs by *Hagens & Wehrli* of Casper and *C. R. Ellery* of Cheyenne and an oral argument by *C. R. Ellery.*

BLUME, Justice.

Six cases, in each of which W. F. Henning is plaintiff in error, were argued together, all involving the same question. They are causes No. 1930-1935 of this court, and causes No. 6525, 6527, 6528, 8301, 8433 and

8434 of the district court of Natrona County. The cases involve the validity of special assessments in sanitary sewer districts of the city of Casper Nos. 1, 2B, 3A, 3B, 4, and 6, and the validity of the bonds issued pursuant thereto and now held by the plaintiff. Three of these cases were originally commenced on May 20, 1927. In each of them an amended petition was filed on October 14, 1932. A demurrer thereto was filed, and sustained. From the judgments thereon, the plaintiff has brought proceedings in error.

The amended petitions are all alike, except as to the dates, numbers of ordinances, amounts of bonds issued and other minor matters inherently different in the different cases. They each allege: The passage of a resolution of intention to create a sanitary sewer district, the date, the boundaries of the district, and the giving of the notice thereof; that no remonstrances were filed; that thereafter the city engineer prepared and filed with the city clerk plans and specifications for the improvement; that bids were called for and the contract let and duly performed by the contractor; that thereafter an assessment roll was prepared and filed and notice thereof was duly given; that no remonstrances were filed and the assessments against the various properties were duly confirmed; that bonds were thereupon issued as provided by law, a number of which are now held by the plaintiff and are unpaid. In each of the cases judgment is prayed for the foreclosure of the assessments against the various property holders. The judgment entered in the respective cases recites that in creating the respective sanitary sewer districts

"mentioned and described in plaintiff's amended petition, in passing the resolution of intention therefor, in the hearing thereon, in the preparation, filing and giving notice of and hearing of objections to the assessment roll, in making the assessments, and in the issuing and sale of bonds described in plaintiff's

amended petition, the city of Casper followed the procedure provided in and acted pursuant to the provisions of chapter 120 of the Session Laws of the State of Wyoming for the year 1915, except, however, that in apportioning the assessments for the expense of said sewer, said assessments were apportioned as provided in chapter 56 Sec. 1 of the Session Laws of the State of Wyoming for the year 1917; that said city of Casper, and the officers thereof, or either of them were without power and authority under the provisions of chapter 120 of the Session Laws of the State of Wyoming for the year 1915 to levy assessments for said sewer construction, or to issue bonds, or to sell the same in payment therefor, and that said assessments against the property of the defendants heretofore mentioned, and the bonds issued, are illegal and void under the laws of the State of Wyoming."

It is contended herein that the city council of Casper, a city of the first class, in following in its initiatory proceedings, the provisions of Chapter 120 of the session laws of 1915, embodied in Section 1966 and subsequent sections of the Compiled Statutes of 1920, acquired no jurisdiction, and had no power, to levy special assessments for sanitary sewers, or issue bonds in connection therewith. The contention is based upon the theory that the 1915 law does not provide for the construction of sanitary sewers, and that, accordingly, other laws, hereinafter mentioned, should have been followed, and the contention is that this was not done. We held in Henning v. City of Casper, (Wyo. 57 P. (2d) 1264, that the provisions of the act of 1915 enabled the city to create and improve sanitary sewer districts, and that the city council did not err in following that act in its initiatory proceedings, or in following the later act, namely, Section 1, c. 56, of the Session Laws of 1917, in apportioning the assessments. That case was decided before the court had knowledge of the fact that the instant cases directly involve the questions mentioned. Our attention was not called to

that fact, or we should, probably, have ordered the cases to be heard at the same time. We are satisfied that the decision in the Henning case on the question now before us was correct, but in view of the fact that some additional arguments have been made herein, we shall, to some extent at least, go over the subject again. It is not questioned that the council had a right to apportion the assessment in accordance with the act of 1917 supra, and we need not, accordingly, add anything to what we said on that point in the Henning case.

The provisions of the act of 1915 giving the city the power to make local improvements, and which, it is contended, do not include sanitary sewers, are as follows, as contained in the Compiled Statutes of 1920:

Sec. 1966: "Any city or town in this state shall have power to provide for the making and maintenance of local improvements and levy and collect special assessments on property specially benefitted thereby, for paying the cost and expense of the same or any portion thereof as herein provided."

Sec. 1968, Subd. B. "The term 'drains' and 'drainage' shall be deemed to include surface sewers, drains, gutters and all kinds of drainage other than sanitary sewers. * * * The term 'improvements' shall be deemed to mean any local improvement of any kind, except sidewalks." etc.

Sec. 1970. "Whenever any city or town shall make local improvements * * * the proceedings for the same shall be had as provided in this chapter." etc.

Sec. 1971. "Any such improvement may be initiated directly by the city or town council by a resolution declaring its intention to make an improvement, which resolution must specify with convenient certainty the streets, street or part of street proposed to be improved, the boundaries of the proposed assessment district, the character, kind and extent of the improvement, and if the improvement be paving, the council shall specify the kinds of paving" etc.

It is contended that section 1966, in giving the city power to make "local improvements," did not include

therein the right to construct sanitary sewers, because the term "local improvements" as theretofore used by the legislature of this state was limited to improvements of streets, and that hence this limited meaning must be ascribed to the term "local improvement" as used in section 1966, supra. That this term would ordinarily include the construction of sanitary sewers can hardly be doubted. Walters v. Tampa, 88 Fla. 177, 101 So. 227; 44 C. J. 152, 171. And hence the general language used in section 1966, supra, should be held to include them, unless it appears otherwise in the legislative acts. Counsel points particularly to the acts of 1907 and 1909, relating to cities of the first class, in which, as counsel asserts, the term was given the limited meaning above mentioned. Prior to 1907, cities of the first class do not seem to have had any power to improve streets by assessments levied against the abutting property, except in connection with sidewalks. They had, however, the power to levy special assessments for the purpose of constructing sewers. Sec. 1637, subd. 3-8, and Sec. 1638, Rev. St. Wyo. 1899. There is nothing in these sections to indicate that the term "sewers" did not include sanitary sewers, and if it included them, the legislature evidently deemed it more important at that time that assessments should be made for sewers than for paving and other like street improvements. In any event, the term "local improvement" was not used in these laws and there is nothing to indicate that the legislature understood it in a limited sense.

In Chapter 71 of the Session Laws of 1907, which amended the powers of cities of the first class, the subdivisions of section 1637, supra, were omitted. Section 1638 was repealed, so that, with these provisions eliminated, all power to make assessments for local improvements was taken away. But the legislature, by the same act, namely, section 26 thereof, com-

bined in one section all provisions relating to special assessments, and provided that such cities should have power "to contract for and make local improvements and to assess the cost thereof upon the lots or other subdivisions of lands abutting on the streets and other public thoroughfares so improved." The term "sewer" was not used, but the term "drain" was. It is, therefore, not improbable, as counsel for the respondent contends, that the legislature, by the act of 1907, meant to confine the term "local improvement" to street improvements, but that conclusion follows from the context, and not necessarily from the use of the term "local improvement" standing by itself. Hence the provision cannot be said to furnish a definite criterion for the meaning thereof when it is used generally as in section 1966, supra. No light on the subject is shed by the legislative act of 1909, namely, chapter 51 thereof, which further amended the powers of cities of the first class, and which repealed section 26 of the act of 1907. The term "local improvement" seems to have been avoided throughout. Special provisions were made for "street improvements" and for "sewers." No other statutes have been cited which attribute counsel's limited meaning to the term "local improvement." Hence if such limited meaning is to be gathered from legislative acts at all, it must be from one act, namely, from section 26 of the act of 1907, which was in force but two years. Such situation is not altogether persuasive. In any event, while there are some sections which cast a doubt on the subject, there is nothing in the act of 1915 which indicates unmistakably that sanitary sewers were not contemplated thereby. On the other hand, the cited provision under subd. B, Section 1968, states that the term "improvement" shall be deemed to mean *any* local improvement of *any* kind. That is all-comprehensive. The legislature was not even satisfied with this clear language, but added "except sidewalks."

Thus it made but one exception. If it had intended to
make two exceptions, and intended to exclude not only
sidewalks but also sanitary sewers, it would, doubtless,
have so stated. The provision seems so incisive that
we cannot give it a meaning other than that which it
bears on its face.

It is further argued, however, that the act of 1909
already mentioned, and the provisions relating to the
construction of sewers (sections 1858, 1876-77, 1881,
1884-1886, 1888, Comp. St. 1920) were left in full
force and effect by the act of 1915; that the latter act
repeals only all acts in conflict therewith, and that
hence it is shown that the act of 1915 was not intended
to cover the construction of sanitary sewers and the
assessments therefor. But the argument does not go
far enough. It is said in 44 C. J. 189 that "the legisla-
ture may provide two or more independent methods
for the making or acquisition of municipal improve-
ments, or it may confer an additional right to the
general power of the municipality without destroying
such general power." Hence, before the conclusion
drawn by counsel for respondents may be said to have
any basis or foundation, it should first be determined
as to whether the method pointed out in the 1915 act
is an additional method or a method which was in-
tended to take the place of the earlier method. That
has not been done. Counsel have not argued the point.
Of course, if the method provided by the act of 1915
was merely an additional method, the whole argument
of counsel falls, and since they have failed to enlighten
us on that point, we might well dismiss it without
further consideration. Moreover, counsel can hardly
be right in his contention that the act of 1909 is the
only legislative act in existence providing for the con-
struction of sanitary sewers. Chapter 56 of the Session
Laws of 1917 provides that "every city or town in this
state incorporated heretofore or that may hereafter be

incorporated under the general laws of Wyoming, or under special charter, shall have the power to make special assessments for the construction of sewers." The act then provides for the apportionment of the assessments, and continues to the effect that "each city or town is hereby authorized to adopt such ordinances and resolutions as may be necessary to levy and collect such special assessments," etc. It can hardly be contended that the city council of Casper did not comply with this law. Nor can the act be considered otherwise than as providing an additional method for cities of the first class in the construction of sewers and the assessments in connection therewith, for the act applies as well to every other city and town in this state. True, the act does not provide for the issuance of bonds. Whether that power would exist as an incident to the other powers granted need not be decided. The assessments herein were actually made for the benefit of the bondholders. That is undisputed, and hence they should, in equity, inure to their benefit.

But let us take a further step, and assume with counsel, for the purposes of this case, that the 1909 act should have been followed herein in the preliminary steps. It does not necessarily follow from that assumption that the assessments made herein are invalid. And the further fact that the ordinance or bonds may have recited that the council followed, in its preliminary proceedings, the act of 1915 is of little, if any, importance. The facts must govern. If the council acquired jurisdiction to make the improvement and substantially complied with the law in taking the steps provided therein, then the respondents herein cannot complain. McQuillan, Mun. Corp. (2nd Ed.) Sec. 1997. Counsel states that the 1915 act differs in a number of particulars from the 1909 act. It is admitted that the act of 1915 was complied with, and in order to determine whether in doing so, it substantially followed the

requirements of the act of 1909, we may be permitted for a moment to compare the two acts.

Under the 1909 act the initial step is the introduction of an ordinance to make the improvement. This ordinance cannot be adopted until after notice of its introduction and the general purport thereof has been published. The initial step under the 1915 act is a resolution of intention to make the improvement, duly adopted, and stating the character, kind and extent of the improvement. Notice thereof must be published, the character of which is similar to that provided for in the 1909 law. In fact the whole of the resolution must be published, thus showing the character and extent of the improvement, and, further, the time and place when objections may be filed. It is, in other words, more complete in these respects than the act of 1909. The final ordinance to make the improvement cannot, under the act of 1915, just as under the act of 1909, be adopted until the notice has been published and a hearing has been had. The notice provided in the 1909 act is one notice published within five days after the introduction of the ordinance and a further period of five days must intervene before the ordinance is adopted. Under the 1915 act ten days' notice must be published, and this again is more favorable to the persons affected. The 1915 act provides that upon the filing of a certain number of protests, the intention to make the improvement may be entirely stopped for the period of six months. No such protective measure is contained in the act of 1909. Under the 1915 act, plans and specifications must be prepared and filed before the contract is let. The act of 1909 is silent on the point. The 1915 act provides for notice for bids. The act of 1909 is silent on that point, though, probably, notice must be given under general laws. Other protective measures are, however, provided for in the later act, which are lacking in the earlier act. The 1915 act

provides that "when the contract for any improvement shall have been awarded, the city engineer shall forthwith proceed to levy an assessment." This, of course, refers merely to the preparation for an assessment, and the time for actually making it (Section 1985, Comp. St. 1920) is not specifically provided for. Under the 1909 law (Sec. 1884, Comp. St. 1920), the assessment is to be made after the completion of the work. In the case at bar the assessments were not made until that time. Under the 1909 law, a plat must be filed, showing the lots to be assessed, and the amount to be assessed against each. Under the 1915 law, an assessment roll must be prepared, containing, of course, the amounts assessed against each lot. Notice of such assessment and the right to make objections thereto must, under the 1909 law, be given by two publications; in the 1915 law by five publications in a daily newspaper, or two times in a weekly newspaper. Under the earlier law, objections must be filed within ten days after the first publication; under the later law within fifteen days after the last publication, unless a later date is fixed, thus again giving materially better protection to the persons interested.

It may, accordingly, be noted that all the essential and vital steps necessary under the 1909 law are provided for under the 1915 law. In fact in the most vital points the later act more fully and better protects the persons interested than the earlier act. That is, indeed, freely admitted by counsel for the respondents, and it is, accordingly, difficult to see wherein the respondents can find any prejudice, or how it can be said that the provisions of the act of 1909 have not been substantially complied with. There are slight deviations in the two acts, which are not, however, we think, vital. They can at most be said to be irregularities. And it is provided in the act of 1909, namely, by section 1887, Comp. St. 1920, that "all objections to error, irregu-

larities or inequalities in the making of special assessments, or in any of the prior proceedings or notices not made before the council at the time and manner herein provided for, shall be deemed waived in any and all proceedings wherein the same are attacked or sought to be attacked for any reason whatever, except where fraud is shown." The attack made in this case on the assessments in question is a collateral attack, just as the attack in the case of Bass v. Casper, 28 Wyo. 387, 207 Pac. 1008. That case discusses at length the principles of law which govern when that is true. It is difficult to see how the court could have arrived at its conclusions, if that case had been called to its attention, which was probably not done.

The judgment of the trial court is, accordingly, reversed, and the cause is remanded with direction to overrule the demurrers, and for such further proceedings as are not inconsistent with this opinion.

*Reversed and remanded.*

KIMBALL, Ch. J., and RINER, J., concur.