# IN RE IMPROVEMENT UNDER SPECIAL ASSESSMENT STATUTES BY SANITARY SEWER, CITY OF CHEYENNE

## SCHOOL DIST. NO. 1, IN LARAMIE COUNTY, v. CITY OF CHEYENNE

(No. 2186; June 11, 1941; 113 Pac. (2d) 958)

For the appellant, there was a brief by *William O. Wilson* and *James O. Wilson* of Cheyenne, and oral argument by *William O. Wilson.*

124

For the respondent, there was a brief and oral argument by *Carleton A. Lathrop* of Cheyenne.

RINER, Chief Justice.

The question to be determined in this case is whether a School District in this State may properly be held liable for the payment of its proportionate share of a special assessment for a sewer line constructed by a municipality of this commonwealth under the circumstances shown by this record. The district court of Laramie County decided that such School District could and should be held so liable, and entered a judgment accordingly. From that judgment the unsuccessful litigant, School District No. 1 of Laramie County, Wyoming, has appealed and employed the direct appeal method of procedure to bring the case here for review. For the sake of convenience and brevity the School District aforesaid will be hereinafter usually referred

to either as the "District" or as the "appellant". The City of Cheyenne, which is the municipality seeking to collect the aforesaid proportionate part of the sewer assessment, will ordinarily be mentioned herein as the "City" or as the "respondent". The facts involved may be briefly outlined thus:

The District as the owner of all of Block 373 in said City, some time previous to that when the sewer assessment proceedings presently to be mentioned were initiated by the City, erected on said block in said City a school building known as the Alta Vista School. This building is located on a portion of the east half of said block. When the said building was erected there were no lateral sanitary sewer lines in the vicinity of said block. In order to supply this school building with proper and essentially necessary sewer facilities, the City permitted the District to make a temporary sewer connection with the main trunk line sewer owned and constructed by the City, said trunk line being located on Logan Street on the easterly side of said block. It appears that the City ordinarily employs the trunk line sewers to be fed from lateral branches which empty into them, and such trunk lines are necessarily placed at a greater depth in the ground than the branch laterals. It is also true that these trunk lines usually have no wyes on them for connections to be thereby made for residences or other buildings adjacent which may need such facilities. Such being the situation, when the erection of the Alta Vista School Building was completed the sewer connection for it was made through a manhole of the trunk line sewer aforesaid.

As the demands of the property in the vicinity of this school building for sewer facilities increased, it became necessary for the City to construct a branch or lateral sewer line through the alley in certain blocks in that locality, among them being Block 373 aforesaid. This lateral sewer line connected with the trunk line

on Logan Street. It may be here noted that no assessment or charge was ever made by the City against the property owned by the School District for the accommodation of temporarily connecting the Alta Vista School Building with said trunk line, the cost of said trunk line being borne exclusively by the City; and also that in the course of his testimony in this case the City's Engineer answered the query, "You say that the present connection of the Alta Vista School with the trunk line on Logan Street is through a manhole?" as follows: "It was. We had to take it out and put the laterals through the alley and make new connections." The city having laid the necessary lateral sewer lines to service the locality, including therein Block 373, instituted assessment proceedings to collect the proportionate cost from the adjoining property owners, among these being the District aforesaid, its share of the cost being $290.59, the procedure being in accord with the provisions of Section 22-146 W. R. S., 1931, (Laws of 1917, Chapter 56, Section 1) and the city ordinances enacted thereunder. The School District filed its protest with the City against paying for the portion of the assessment charged against it. This protest was in due course considered by the City Council and rejected. Thereupon the District appealed to the district court aforesaid, and that court, as above indicated, after the several parties had presented evidence in the matter and been heard by counsel, entered its judgment finding that the relief prayed for by the appellant should be denied, and that thereafter it was "ordered, adjudged and decreed that the relief prayed for by appellant herein be, and the same is, hereby denied at appellant's costs, and that said special assessment for sanitary sewer be confirmed and approved as against said School District No. 1; to all of which findings and judgment the appellant duly excepted, and exception allowed".

The District insists that it should decline to pay its proportionate part of this assessment. No objection seems to be made that the amount of the assessment was calculated inaccurately under the requirements of the law invoked by the City, but it is contended chiefly for said District that the City did not follow the proper statute in its procedure for assessment of property to pay for this sewer improvement; that as the District was allowed to make a temporary sewer connection with the manhole in the main trunk line sewer on Logan Street, it has all the sewer facilities it now needs, is not benefited for that reason, and consequently may not be assessed its proportionate part for this improvement; also that school property being exempt from taxation should not, and could not, be held responsible for the payment of this assessment, and that it would be a misappropriation of the funds of the District if the payment should be made. After careful consideration, we think all these contentions must be resolved against the District.

In making the questioned assessment the City followed the procedure directed by the provisions of Section 22-146, W. R. S., 1931, already mentioned. This statute was enacted first as Chapter 7 of the Laws of Wyoming for 1903. In its present form it appears first in the body of our law as Chapter 56, Section 1, Laws of 1917, and in that form it seems to have been carried forward without change into the 1931 Revision of the Wyoming Statutes. In large measure the essential features of the law were before this Court in the case of McGarvey v. Swan, 17 Wyo. 120, 96 P. 697, and its constitutionality was there upheld. Again, in the comparatively late case of Henning v. Consolidated Building & Loan Co. et al., 50 Wyo. 315, 327, 62 P. 2d 540, this statute as well as that appearing in the laws of Wyoming, 1915, C. 120, Section 1 et seq., now Revised Statutes of 1931, Section 22-1501 et seq., received con-

sideration at the hands of this court, and this was said concerning the 1917 law:

"Chapter 56 of the Session Laws of 1917 provides that 'every city or town in this state incorporated heretofore or that may hereafter be incorporated under the general laws of Wyoming, or under special charter, shall have the power to make special assessments for the construction of sewers'. The act then provides for the apportionment of the assessments, and continues to the effect that 'each city or town is hereby authorized to adopt such ordinances and resolutions as may be necessary to levy and collect such special assessments,' etc. It can hardly be contended that the city council of Casper did not comply with this law. Nor can the act be considered otherwise than as providing an additional method for cities of the first class in the construction of sewers and the assessments in connection therewith, for the act applies as well to every other city and town in this state."

In the light of what was said in these two decisions concerning this law, we readily reach the conclusion that the City very properly followed the procedure authorized by it in making the assessment it did and that the contention of the District that the procedure indicated by Section 22-1501 W. R. S., 1931, aforesaid, and the following sections relating to making certain improvements in cities and towns in this state and imposing assessments therefor, is the only method whereby sewer assessments can be made by municipalities is without foundation.

So far as concerns the contention of the District that it was not benefited by the construction by the city of the branch or lateral sewer line for which the assessment in question was made because said District had previously been allowed by the City to connect the Alta Vista School building with the main trunk line sewer on Logan Street, the exhaustive opinion written by Chief Justice Potter in the Swan case, supra, would

appear to settle the point. Among other things in that opinion this was said:

"It is very clear that the mere fact that a corner lot has once had an assessment imposed upon it for the construction of a sewer in front of it along one of the streets upon which it abuts does not necessarily furnish a constitutional reason why it may not be subsequently assessed for the construction of a sewer along and through the other street upon which it abuts. Indeed, it is generally held that the existence of a sewer, of either private or public construction, is no defense against an assessment for the construction of a new sewer; for it has been deemed evident that although the property may not need the new sewer for present drainage purposes, it may, nevertheless, be enhanced in value thereby and so receive a benefit in addition to that derived from the former sewer. Proper sewerage facilities in a city is of such sanitary importance that the construction of a sewer has a well known tendency to enhance the value of all the contiguous or adjacent lots in the neighborhood of its construction regardless of the present necessity of any particular tract for sewer connections. It is apparent that plaintiff's corner lot might have received additional value by reason of the enhancement in value of the other lots in the neighborhood and the general improvement of the condition of the neighborhood from a sanitary standpoint. It may be that the benefit will not be as great as that which is received by other property having no previous sewer facilities; but that it may be benefited is a generally accepted theory. In other words the benefit in such case is not dependent altogether upon a necessity for present drainage or sewer connections."

Many other benefits flowing to the District from the construction of the branch line sewer involved in this regard readily suggest themselves, among which are: The Alta Vista School building the record discloses occupies only a portion of Block 373 aforesaid; there was, and could be, no assurance that in the future the unused portion of that block might not be sold and used for quite other than present purposes or that in

the event the population of the locality increased an addition to the present school building might be required, when, of course, additional sewer facilities would undoubtedly have to be forthcoming. The good health of the people in the region adjacent to the school building was certainly vital in maintaining the health of the teachers and pupils alike in the Alta Vista School building. It appears to us that a healthful, disease-free region is of supreme importance and benefit to a school located in that vicinity. It naturally tends to increase the value of such property for the purpose for which it is used. The new branch sewer in the case at bar, supplied with wyes for speedy connection with the school building, might easily prevent a disastrous situation arising from a sanitary point of view if through any unforeseen catastrophe or unforeseen event the present sewer connection of the Alta Vista School building should be interrupted or broken.

Relative to those provisions of the Constitution and the Statutes of this State exempting school district property from taxation, it may pertinently be observed that in Sullivan v. Blakesley, 35 Wyo. 73, 246 P. 918, this court, in speaking of special assessments for improvements levied by an irrigation district, has pointed out that:

"The exactions authorized to be made by such districts may, in a broad sense, be termed taxes, but they are distinguishable therefrom, for they are levied for local benefits to be spread on the property in the districts in proportion to the peculiar advantages accruing to each parcel therein from the improvement made. Whether in the form of special assessments or in the form of taxes, they are essentially assessments for local benefits and not levied for general governmental purposes, as are the taxes contemplated in the constitutional provisions mentioned and referred to in the statement of facts."

In this connection we may review with propriety

certain additional authorities supplying logical reasons for the view concerning the contentions of the District expressed above:

In the comparatively recent case of City of Meadville v. Odd Fellows Home, 128 Pa. Super. Ct. 180, 193 A. 662, the court used this language, including therein, it will be noted, an excerpt from one of Mr. Justice Brewer's opinions in the Supreme Court of the United States:

"The only question involved is whether the defendant is by a provision in its charter exempted from liability for a claim arising from the construction of a sewer in the city of Meadville and in a street on which defendant's property fronted.

"The defendant was incorporated by the special act of April 3, 1872, P. L. 880, for the purpose of maintaining a home where there would be received indigent members of the Independent Order of Odd Fellows and widows and children of members. By section 2 it was provided: 'That the estate, real and personal, and all property that shall be held by this corporation, be and the same is hereby exempted from all assessment and taxation so long as the same shall continue to be used for the use and purposes of this corporation.' The appellant contends that the words 'assessment' and 'taxation' should be read together and construed as referring to general taxes only.

"We are all of the opinion that the exemption extended to the defendant did not relieve it from the payment of municipal claims for benefits which were of special value to the defendant but granted immunity only from the assessment and payment of general taxes. 'All stautory tax-exempting provisions are to be strictly construed.' Harrisburg v. Harrisburg Cemetery Ass'n., 293 Pa. 390, 394, 143 A. 111, 112; Com. v. Lowry-Rodgers Co., 279 Pa. 361, 123 A. 855; Com. v. Sunbeam Water Co., 284 Pa. 180, 130 A. 405.

"While assessments for the construction of sewers and original grading and paving of streets, etc., have always been regarded as a species of taxation (Oil City v. Oil City Boiler Works, 152 Pa. 348, 354, 25 A. 549; Michener v. Philadelphia, 118 Pa. 535, 540, 12 A.

174), yet there is a clear distinction made in the cases between taxes imposed for the common benefit of all and those assessed for special benefits against particular properties or their owners on account of and to the extent of such special benefits. In Illinois Cent. R. Co. v. Decatur, 147 U. S. 190, 197, 13 S. Ct. 293, 294, 37 L. Ed. 132, Mr. Justice Brewer said: 'Taxes proper, or general taxes, proceed upon the theory that the existence of government is a necessity; that it cannot continue without means to pay its expenses; that for those means it has the right to compel all citizens and property within its limits to contribute; and that for such contribution it renders no return of special benefit to any property, but only secures to the citizen that general benefit which results from protection to his person and property, and the promotion of those various schemes which have for their object the welfare of all. * * * On the other hand, special assessments or special taxes proceed upon the theory that, when a local improvement enhances the value of neighboring property, that property should pay for the improvement. * * * Founded on this distinction is a rule of very general acceptance,—that an exemption from taxation is to be taken as an exemption simply from the burden of ordinary taxes, taxes proper, and does not relieve from the obligation to pay special assessments.' "

So in Bensberg et al., v. Parker, 192 Ark. 908, 95 S. W. 2d 892, the same rule was thus set forth:

"Our Constitution (art. 16, § 5) provides: 'Provided further, that the following property shall be exempt from taxation: Public property used exclusively for public purposes; churches used as such, cemeteries used exclusively as such; school buildings and apparatus; libraries and grounds used exclusively for school purposes, and buildings and grounds and materials used exclusively for public charity.'

"The established rule is that the constitutional exemption refers alone to taxes for general purposes of revenue, and has no reference to special taxes or assessments for local improvements. Board of Improvement v. School District, 56 Ark. 354, 19 S. W. 969, 16 L. R. A. 418, 35 Am. St. Rep. 108.

" 'It is the well established rule that a constitutional or statutory exemption from taxation is to be taken as an exemption from ordinary taxes, for the general purposes of government—state, county, or municipal —and does not relieve those in whose favor such exemption exists from the obligation to pay special assessments for local improvements which are charged upon property on the theory that such property is specially benefited thereby.' 25 R. C. L. § 40, p. 124; Sloan on Improvement Districts, Vol. 1, § 5."

The New York Court of Appeals in Board of Education of Union Free School Dist. No. 6 of Town of Greenburgh v. Town of Greenburgh, 277 N. Y. 193, 13 N. E. 2d. 768, has very well said that:

"The property of plaintiff was subject to assessment and taxation for the local improvements unless expressly exempted by the act under consideration. It is impossible to read the act as a whole and discover any specific exemption or intent on the part of the Legislature to exempt school property abutting upon the streets to be improved. The Legislature did not so express itself. It cannot be read into the act by implication. Taxation is the rule, not the exception. Conversely, exemption from taxation is the exception and not the rule, and the Legislature must specifically exempt or clearly demonstrate its intent to exempt real property from taxation before any exemption can be claimed or maintained. Especially must this be so where unjust and inequitable results would obtain from the exemption of property deriving special benefit from an improvement."

And in Jackson, County Treasurer, v. Board of Education of Cedarville Tp. Rural School District, 115 Ohio St. 368, 154 N. E. 247, the Supreme Court of Ohio forcefully remarked:

"If the Cedarville rural school district were identical with Cedarville village, there would be no injustice in permitting the assessment to be paid out of the general fund of the village. To compel the board of education of the village to levy a tax to pay the assessment would

be, in no sense, different from compelling the council of the village to levy a tax upon the same property for the same ultimate purpose. The school district, however, not being identical with the village, if the assessment should be paid out of the general fund of the village, all the patrons of the school, including those in the township outside of the village as well as those within the village, would be equally benefited, and yet those patrons of the school, outside of the village, would have nothing to pay. The injustice of such a result would be shocking.

"We have not, however, reached our conclusions upon considerations of justice or injustice, but we find ample general authority in section 3812 for making the assessment, and nowhere do we find any exemption of boards of education from the operation of that general authority.

"We find further that the statutes now make ample provision for levies of taxes for payment of improvements upon school property and for payment of assessments levied by other taxing authorities, under the provisions of section 3812. The levy of the assessment upon the abutting property belonging to the rural school district created a debt against the board of education, in every respect as valid as if a contract had been made for the same improvement by the board of education itself. If the board of education should not voluntarily make a levy to pay the assessment, the board could be compelled to do so by a writ of mandamus. We have therefore reached the conclusion that the assessment is valid and that the county treasurer may maintain an action to recover the amount of the assessment so levied."

Of similar purport are the cases of City of Kalispell v. School District No. 5, 45 Mont. 221, 122 P. 742, Ann. Cas. 1913D 1101, City of Wichita v. Board of Education of City of Wichita, 92 Kan. 967, 142 P. 946; Sioux City v. Independent School District, 55 Iowa 150, 7 N. W. 488; Williams College v. Williamstown, 219 Mass. 46, 106 N. E. 687; School Town of Windfall City v. Somerville, 181 Ind. 463, 475, 104 N. E. 859, Ann. Cas. 1916D 661, State v. Robertson, 24 N. J. L.

504; Dinn v. North Hempstead Union Free School District No. 4 Board of Education, 121 Misc. Rep. 633, 202 N. Y. S. 62; State v. Macalester College, 87 Minn. 165, 91 N. W. 484.

It is further suggested that payment of such an assessment as is now questioned by the District might amount to a misappropriation of school funds. However, to us it would seem on the contrary, that to use school funds to increase and preserve the health and welfare of the pupils and teaching staff of the Alta Vista and other schools would be one of the highest and most important uses to which school moneys could be applied. Under the authorities above cited we can see no proper objection to allowing an assessment of this kind to be confirmed.

The law, Section 22-146, supra, under which the City proceeded, provides, as we have seen, that "such assessments shall be made on *all* lots and pieces of ground to the center of the block, or if such sewers shall be constructed in an alley then on all lots and pieces of ground to the nearest street or avenue on each side of the alley, extending along the street, avenue or alley, the distance improved, or to be improved". There is no exception or exemption as to property affected, as the law now reads, and unquestionably it is not the province of this court to make any.

Without saying more, though much more could be said, it is our conclusion that the judgment of the district court of Laramie County was correct in confirming and approving the assessment in question, and that judgment is accordingly affirmed.

*Affirmed.*

KIMBALL and BLUME, JJ., concur.